IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JERRI LYNN SHAFFER                                                                PLAINTIFF

V.                                       NO. 11-5080

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jerri Lynn Shaffer, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on May 23, 2007, alleging an inability to work since April 28, 2007, due to "Bipolar, chronic anxiety, depression and fatigue, hypertension." (Tr. 45, 149, 153). An administrative hearing was held on June 1, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 12-35).

By written decision dated October 7, 2009, the ALJ found that during the relevant time

-1-

period, Plaintiff had an impairment or combination of impairments that were severe - bipolar disorder, borderline personality disorder, and mood disorders. (Tr. 47). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 47). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but has moderate restrictions in maintaining social functioning and concentration, persistence, and pace. She is moderately limited in the ability to understand, remember, and carry out detailed instructions, respond appropriately to usual work situations and routine work changes, and interact appropriately with the public. Moderately limited means there is more than a slight limitation, but the person can still perform in a satisfactory manner. She can perform work in which interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote with few variables and little judgment required. Supervision is simple, direct and concrete.

(Tr. 48). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform work as a cashier II; poultry production worker; and fast food worker. (Tr. 52).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 24, 2011. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 3). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial

AO72A
(Rev. 8/82)

gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff contends that the ALJ erred in concluding that Plaintiff was not disabled because (1) the ALJ rejected Plaintiff's subjective complaints of disabling mental limitations; and (2) the ALJ erred in rejecting Dr. Theresa Farrow's opinion, which should have been accorded controlling weight. (Doc. 8).

#### A. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility

is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Plaintiff contends that her impairments were disabling. However, the evidence of record does not support this conclusion.

With respect to Plaintiff's daily activities, the record reflects that Plaintiff is able to work 15 hours a week at a video store, running the cash register, restocking movies, and reconciling paperwork at closing (Tr. 19-20); get her son off to school; and attend church on occasion. (Tr. 19-20, 27, 31). Although Plaintiff reports in an Undated Disability Report - Appeal that she is unable to shower, cook, clean and take care of "general stuff" every day, Plaintiff reported to Dr. Jeanne H. Curtis, Psy.D., on March 25, 2009, that she needed no assistance with activities of daily living. (Tr. 383).

The ALJ recognized that Plaintiff described somewhat limited daily activities. However, he found that two factors weighed against considering the allegations to be strong evidence in favor of finding Plaintiff disabled: First, he found that the allegedly limited daily activities could not be objectively verified with any reasonable degree of certainty; and second, even if Plaintiff's daily activities were truly as limited as alleged, it was difficult to attribute that degree of limitation to Plaintiff's medical condition, in view of the evidence and other factors discussed in his decision. Some of those other factors discussed by the ALJ were the fact that Plaintiff has, on occasion, been noncompliant in taking prescribed medications in the proper dosage and on time; works 15 hours a week and runs the cash register, restocks movies, and reconciles paperwork at closing; communicates effectively; and performs activities of daily living

autonomously.

Plaintiff argues that the ALJ cannot justify his credibility finding based on the ALJ's statement that limited daily activities cannot be objectively verified, and that it is not a listed factor in SSR 96-9p for a credibility analysis. The plain language of SSR 96-9p "makes clear that it only applies in cases involving individuals with '[an RFC] assessment for less than a full range of sedentary work.'" Boyce v. Astrue, No. CV 111-016, 2012 WL 1245658, at *3 (S.D. Ga. Mar. 15, 2012), adopted 2012 WL 1245670 (Apr. 12, 2012). In the present case, the ALJ found Plaintiff could perform a full range of work at all exertional levels, with certain limitations. Therefore, the fact that Plaintiff's alleged limited daily activities cannot be objectively verified is a valid consideration. See SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996)(whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record).

Plaintiff takes several medications for her mental conditions, and many of them have been effective in treating her conditions, as long as Plaintiff remains compliant. The record reveals that on more than one occasion, Plaintiff chose to reduce the prescribed dosage of medication because of either side effects or because she ran out of the medicine, even though she was told to report any concerns of side effects to the physician promptly. (Tr. 232, 263-264, 271-272, 274, 281, 333, 335, 339, 362). In May of 2008, Dr. Kathleen Dahlmann, of Ozark Guidance, Inc., reported that Plaintiff stated she was having no side effects from her medication and was "doing the best that she has ever done." (Tr. 362). Her moods were stable and she was

sleeping well. She was a little edgy that day, however, because she had been out of her Lamictal for a couple of days. (Tr. 362). Plaintiff was also reported as doing quite well in July of 2008. (Tr. 368). An impairment that can be controlled by treatment or medication is not considered disabling. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002).

In the present case, the ALJ properly considered all of the evidence of the entire record and gave good reasons for finding that Plaintiff was not fully credible.

### B. RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

On February 5, 2008, non-examining consultant Dr. Kay M. Gale completed a Mental RFC Assessment. (Tr. 324-326). Dr. Gale found that Plaintiff was moderately limited in five out of twenty categories, and was not significantly limited in fifteen out of twenty categories.

(Tr. 324). Dr. Gale also found that Plaintiff was able to perform work "where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, with few variables, uses little judgment; supervision required is simple, direct and concrete. Unskilled work." (Tr. 326). Dr. Gale also completed a Psychiatric Review Technique report on February 5, 2008, finding that Plaintiff had a mild degree of limitation in restriction of activities of daily living; moderate degree of limitation in difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and no episodes of decompensation, each of extended duration. (Tr. 320). She concluded that Plaintiff was being treated for bipolar disorder and borderline personality disorder, and that the medical records did not document any ongoing marked functional limitations at that time. Dr. Gale concluded that Plaintiff seemed capable of unskilled work.[1] (Tr. 322).

In a letter dated October 1, 2008, Dr. Theresa Farrow, Plaintiff's treating physician, reported that Plaintiff had been a patient under her care since May 2007, and that Plaintiff had "reached the point that she can no longer function to work full-time on any regular basis at all." (Tr. 440). She also reported that the most impaired aspect was that "she is unable to maintain attendance, attention, concentration, and consistency in working a normal work week without interference from her psychiatric symptoms." (Tr. 440).

In her Mental RFC Assessment dated January 16, 2009, Dr. Farrow reported that Plaintiff

---

[1]"According to the regulations, unskilled work 'needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010), quoting 20 C.F.R. §416.968(a) (unskilled work is SVP level one or two in the DOT).

was initially seen by her on January of 2008.[2]  (Tr. 190).  She reported that Plaintiff had severe anxiety and depression, with mood swings, panic attacks, agoraphobia, and had problems with attention and concentration.  (Tr. 190).  Dr. Farrow found that Plaintiff had no useful ability to function in seven categories; was unable to meet competitive standards in two categories; was seriously limited, but not precluded in two categories, and was limited but satisfactory in four categories.  (Tr. 192).  She also found that Plaintiff had severe anxiety and was barely able to leave her house.  (Tr. 192).  Dr. Farrow reported that Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month, and gave Plaintiff a GAF score of 37.  (Tr. 193).  However, in a report dated what appears to be January 24, 2009, only one week after Dr. Farrow completed her Mental RFC Assessment, she gave Plaintiff a GAF score of 50 or 60.[3]  (Tr. 373)

On March 25, 2009, examining consultant Dr. Jeanne H. Curtis, Psy.D., evaluated Plaintiff and completed a Mental Diagnostic Evaluation.  (Tr. 381-386).  In the evaluation, Dr. Curtis found that Plaintiff did not need any assistance with activities of daily living, and was working at a video store 15 hours a week, and had been doing so for the past two years.  (Tr. 383).  Dr. Curtis also examined and considered "75 pages of notes from Ozark Guidance."  (Tr. 384).  Dr. Curtis diagnosed Plaintiff as follows:

    Axis I:        Panic Disorder Without Agoraphobia
                       Dysthymic Disorder
    Axis II:       Personality Disorder Not Otherwise Specified

---

[2] This statement is inconsistent with Dr. Farrow's statement given in her letter dated October 1, 2008, where she said Plaintiff had been under her care since May of 2007.  (Tr. 190, 440).

[3] The words in this document, along with some of the other documents, are somewhat blurred, making it a bit difficult for the undersigned to read.  However, it is clear enough to conclude that the GAF score is 50 something or 60 something.

  Axis V:  GAF: 55-65

(Tr. 384). Dr. Curtis found that Plaintiff demonstrated some difficulty coping with the mental and cognitive demands of the evaluation, becoming frustrated when having difficulty or performing poorly. Plaintiff stated she could cope at work most of the time, and had called her boss to come in and work for her two times in two years due to frustration. (Tr. 386). Dr. Curtis also found that Plaintiff demonstrated difficulty with her ability to concentrate during the evaluation, and would typically zero in on one aspect of a task and work on one thing for 2-3 hours, trying to get it perfect and often never finishing. (Tr. 386). However, Dr. Curtis found that Plaintiff was persistent on the tasks of the evaluation, and, with encouragement, was able to persevere even when she had to use her fingers to accomplish the Serial 3's task. Dr. Curtis reported that Plaintiff completed the tasks of the evaluation with a slow to adequate pace, and generally within acceptable time limits. (Tr. 386). Although Dr. Curtis reported that Plaintiff stated she was too easily distracted by other tasks, Dr. Curtis found that Plaintiff could complete the tasks within an acceptable time frame if necessary. (Tr. 386).

  The ALJ considered the medical assessments of non-examining and examining physicians, including Plaintiff's treating physicians, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform a full range of work at all exertional levels, with certain limitations.[4] The ALJ considered and discussed Plaintiff's medications and treatments, and concluded that Plaintiff's mood disorders "have been conservatively treated and controlled with medications and are not severe to a degree that would limit activities beyond the

---

[4]The three jobs the ALJ found Plaintiff could perform: cashier II; poultry production worker; and fast food worker, are all classified as SVP Level 2, which is a level considered to be unskilled work.

scope of the residual functional capacity as determined in this decision." (Tr. 50). The ALJ considered and discussed Dr. Farrow's October 1, 2008 letter, and did not give it probative weight, because the issue of "disability" is one reserved for the Commissioner. (Tr. 50). Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010)(holding that opinions that a claimant is disabled or unable to work concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight). The ALJ also considered and discussed Dr. Farrow's Mental RFC Assessment, and found it to be inconsistent with Plaintiff's documented level of work activity and Dr. Farrow's own treatment notes, which showed that Plaintiff's condition improved with individual therapy and medication management. (Tr. 50). As noted earlier, when Plaintiff was compliant with her medications, and when her medications were managed properly, Plaintiff reported doing "quite well" and "slowly better" and "the best that she has ever done," as late as May and July of 2008. (Tr. 362, 368, 369). In August of 2008, Plaintiff was reported by Dr. Farrow as "overall doing well," except there was a problem with her Lamictal. (Tr. 371). Furthermore, Dr. Farrow gave Plaintiff a GAF score of 55 on May 11, 2008 (Tr. 364), and less than 5 months later, reported she was unable to maintain a work schedule. On January 16, 2009, Dr. Farrow gave Plaintiff a GAF score of 37. However, one week later, gave Plaintiff a GAF score in the 50's or 60's.

      In his decision, the ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the claimant's past work history, the lack of objective medical substantiation of any significant worsening from the time said work took place until the claimant stopped working, as otherwise specified above. ...The undersigned has considered and essentially concurs with the opinions of the state agency consultants who provided assessments at the initial and reconsideration levels and notes that they also support a

-11-

> finding of "not disabled." SSR 96-6p.

(Tr. 51). "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010), quoting Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009). "'The record must be evaluated as a whole to determine whether the treating physician's opinion should control.'" Halverson, 600 F.3d at 929, quoting Tilley at 679. "When a treating physician's opinions 'are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.'" Halverson, 600 F.3d at 929-930, quoting Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002).

The undersigned believes there is substantial evidence to support the ALJ's decision not to give Dr. Farrow's letter probative weight, and to support his decision that Dr. Farrow's Mental RFC Assessment was inconsistent with Plaintiff's documented level of work activity and Dr. Farrow's own treatment notes.

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### C. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's responses to the hypothetical questions posed by the ALJ constitutes substantial evidence

AO72A
(Rev. 8/82)

supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a cashier II, poultry production worker, and fast food worker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff's benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 4th day of June, 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE